UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20398-CR-UNGARO/O'SULLIVAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MABEL DIAZ and ABNER DIAZ

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Mabel and Abner Diaz's Motion to Dismiss Counts 45-56 (DE# 248, 2/21/08), Mabel and Abner Diaz's Motion to Dismiss Counts 34 or 3[9][1] Based on Multiplicity (DE# 249, 2/21/08) and Mabel and Abner Diaz's Motion to Dismiss Counts 2-33 Based on Multiplicity (DE# 250, 2/21/08). This matter was referred to the undersigned by the Honorable Ursula Ungaro in accordance with 28 U.S.C. § 636(b). (DE # __, 2/26/08). Having considered the defendants' motions, the court file and applicable law, the undersigned respectfully recommends that: (1) Mabel and Abner Diaz's Motion to Dismiss Counts 34 or 3[9] Based on Multiplicity (DE# 249, 2/21/08) be **DENIED as moot** and (2) Mabel and Abner Diaz's Motion to Dismiss Counts 45-56 (DE# 248, 2/21/08) and Mabel and Abner Diaz's Motion to Dismiss Counts 2-33 Based on Multiplicity (DE# 250, 2/21/08) be **DENIED**.

---

[1] Although the title of the defendants' motion refers to Count 35, the defendant's arguments are directed to Count 39.

**BACKGROUND**

Mabel and Abner Diaz (hereinafter "defendants") are charged by Second Superceding Indictment with Conspiracy to Commit Health Care Fraud (Count 1) in violation of 18 U.S.C. § 1349, Health Care Fraud (Counts 2-33) in violation of 18 U.S.C. § 1347, Conspiracy to Commit Money Laundering (Count 34 and 39) in violation of 18 U.S.C. § 1956(h), Money Laundering (Counts 35-36, 38) in violation of 18 U.S.C. § 1957, Money Laundering (Counts 40-24) in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and Aggravated Identity Theft (Counts 45-56) in violation of 18 U.S.C. § 1028A. See Second Superceding Indictment (DE# 162, 8/24/07).

On February 21, 2008, the defendants filed the instant motions: Mabel and Abner Diaz's Motion to Dismiss Counts 45-56 (DE# 248, 2/21/08), Mabel and Abner Diaz's Motion to Dismiss Counts 34 or 3[9] Based on Multiplicity (DE# 249, 2/21/08) and Mabel and Abner Diaz's Motion to Dismiss Counts 2-33 Based on Multiplicity (DE# 250, 2/21/08). The government filed Government's Response to Motion to Dismiss Counts 45-56 (Aggravated Identity Theft) (DE# 252) on February 24, 2008 and Government's Response to Motions to Dismiss Based on Multiplicity (DE# 256) on February 29, 2008. The defendants did not file reply memoranda.

**DISCUSSION**

**I.    Mabel and Abner Diaz's Motion to Dismiss Counts 45-56 (DE# 248, 2/21/08)**

The defendants seek to dismiss counts 45 through 56 for failure to state an offense. See Mabel and Abner Diaz's Motion to Dismiss Counts 45-56 (DE# 248, 2/21/08). Counts 45 through 56 charge the defendants with aggravated identity theft in

2

violation of 18 U.S.C. § 1028A. <u>See</u> Second Superceding Indictment. The underlying offense is health care fraud. Specifically, the defendants are charged with knowingly transferring, possessing and using, without lawful authority Medicare beneficiaries' names and Health Insurance Claim Numbers in submitting Medicare claims, in violation of 18 U.S.C. § 1347, which prohibits health care fraud. <u>Id.</u> According to the defendants, health care fraud cannot serve as the underlying offense for aggravated identify theft because it is not "[a] felony violation enumerated in subsection (c)." 18 U.S.C. § 1028A(a)(1). <u>See</u> Mabel and Abner Diaz's Motion to Dismiss Counts 45-56 (DE# 248, 2/21/08).

Title 18, United States Code, section 1028A provides that "[w]hoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." 18 USC § 1028A(a). Subsection (c) provides that "[f]or purposes of this section, the term 'felony violation enumerated in subsection (c)' means any offense that is a felony violation of . . . any provision contained in chapter 63 (**relating to** mail, bank, and wire fraud)." 18 USC § 1028A(c)(5) (emphasis added). The defendants argue that the term "relating to" limits the available underlying felony violations in chapter 63 to mail, bank, and wire fraud. Thus, according to the defendants, health care fraud, although part of chapter 63, is omitted from the underlying crimes listed in subsection (c) of section 1028A.

The defendants rely solely on <u>State v. Rubio</u>, 967 So.2d 768 (Fla. 2007). In <u>Rubio</u>, the defendants were charged with, <u>inter alia</u>, racketeering, in violation Fla. Stat.

§ 895.03(3) (2002), conspiracy to commit racketeering, in violation of section Fla. Stat. § 895.03(4) (2002) and white collar crime, in violation of Fla. Stat. § 775.0844 (2002). Id. at 770. The defendants moved to dismiss these charges arguing that section 817.505 (patient brokering) could not serve as a predicate for the racketeering and white collar crime charges. Id. at 779.

> Section 895.02, Florida Statutes (2002), states in part that:
>
> (1) "Racketeering activity" means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit:
>
> > (a) Any crime which is chargeable by indictment or information under the following provisions of the Florida Statutes:
> >
> > . . . .
> >
> > 26. Chapter 817, **relating to** fraudulent practices, false pretenses, fraud generally, and credit card crimes.

Fla. Stat. § 895.02(1)(a) (2002) (emphasis added).

Similarly, the White Collar Crime Victim Protection Act, Fla. Stat. § 775.0844 (2002), defines "white collar crime" as "[t]he commission of, or a conspiracy to commit, any felony offense specified in . . . Chapter 817, **relating to** fraudulent practices." Fla. Stat. § 775.0844(3)( a)(4) (emphasis added).

With respect to the racketeering counts, the defendants successfully argued that although the patient brokering statute (Fla. Stat. § 817.505) was within Chapter 817, it was not a proper predicate for a racketeering charge because it did not require fraud. Id. at 779. "[S]ection 895.02(1)(a)(26) limits its predicate offense to only those sections that include the elements of fraud by including the 'relating to fraudulent practices, false

4

pretenses, fraud generally, and credit card crimes' language." Id.  Thus, according to the defendants, the "relating to" language limited the predicate offenses on which a charge of racketeering could be based. The defendants made a similar argument with respect to the white collar crime charge. The trial court agreed with the defendants and dismissed the counts. The district court affirmed the trial court on that issue. The Florida Supreme Court, in affirming the dismissal of the racketeering and white collar crime counts, cited the district court's reasoning that "[c]onstruing the 'related to' language as merely referring to the chapter already listed would render that language superfluous." Id. at 780.

As in Rubio, the defendants in the instant case argue that the term "relating to" in the phrase "any provision contained in chapter 63 (**relating to** mail, bank, and wire fraud)" limits the underlying offenses to mail, bank and wire fraud. 18 U.S.C. § 1028A (c)(5) (emphasis added). See Mabel and Abner Diaz's Motion to Dismiss Counts 45-56 (DE# 248 at 4, 2/21/08). "[T]he only chapter 63 offenses that may serve as an underlying crime for a Section 1028A violation are those relating to mail (§ 1341), bank (§ 1344) and wire fraud (§ 1343). " Id.

The government counters that "the phrase ['relating to'] is illustrative, and does not exclude any portion of chapter 63 from consideration as a predicate offense." See Government's Response to Motion to Dismiss Counts 45-56 (Aggravated Identity Theft) (DE# 252 at 2, 2/24/08). The government notes that "section 1028A(c) contains a long list of incorporated provisions, a list that would be incomprehensible to the causal reader without descriptions of the incorporated provisions." Id. at 4-5.

The government relies on United States v. Herring, 602 F.2d 1220 (5th Cir.

5

1979)[2] and United States v. Monjaras-Castenada, 190 F. 3d 326 (5th Cir. 1999) to support its statutory construction. In Herring, the defendant challenged the sufficiency of an indictment charging him with racketeering in violation of 18 U.S.C. § 1962(c) (1976). Section 1961 provided in part:

> As used in this chapter –
>
>> (1) "Racketeering activity" means . . .
>>
>> (B) any act which is indictable under any of the following provisions of title 18, United States Code" Section 201 (relating to bribery), section 224 (relating to sports bribery), section 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, . . . **sections 2314 and 2315 (relating to interstate transportation of stolen property)**, . . . .

Id. at 1223, n. 3 (citing 18 U.S.C. § 1961 (1976)) (emphasis added). The defendant argued that the section 1962(c) count failed to charge an offense because "the section 2314 conduct that allegedly constituted a section 1962(c) pattern of racketeering was not described as interstate transportation of **stolen** property; rather, the conduct pertained only to securities **converted or taken by fraud**. Id. (emphasis in original). Thus according to the defendant, "the explanatory parenthetical . . . limit[ed] the kind of section 2314 conduct that constitute[s] a pattern of racketeering activity for section 1962(c) purposes to interstate transportation of **stolen** property." Id. (emphasis in original).

The former Fifth Circuit rejected the defendant's interpretation of 18 U.S.C. §

---

[2] The Eleventh Circuit in Bonner v. City of Prichard, 661 F. 2d 1206, 1207 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

1961 (1976), noting that "[t]he Organized Crime Control Act of 1970 . . . was enacted to further the eradication of organized crime" and "[s]uch a restrictive reading of the statute as that suggested by [the defendant] would undermine the remedial purposes that Congress intended." Id. at 1223. The Court further noted that "[i]f Congress had intended to exclude the interstate transportation of property obtained by fraud from its definition in section 1961, it specifically could have limited the incorporation of section 2314 as it did the incorporation of section 659, where only felonious acts under section 659 [we]re included."[3] Id. Thus, the Court held that "the reference to the interstate transportation of stolen property in the parenthetical following the citation of section 2314 in the section 1961 definition of racketeering activity was intended merely to aid the identification of section 2314 rather than to limit the proscriptions of that section." Id.

Similarly in Monjaras-Castenada, 190 F. 3d 326 (5th Cir. 1999), the Fifth Circuit held that the "related to" parenthetical in 8 U.S.C. § 1101(a)(43)(N) was descriptive not limiting. The issue before the court was whether a 16-level sentence enhancement pursuant to U.S.S.G § 2L1.2(b)(a) was applicable based on an illegal alien transportation conviction. At the time, U.S.S.G § 2L1.2(b)(a) read: "If the conviction was for an aggravated felony, increase by 16 levels." Application Note One explained that the term "[a]ggravated felony" was defined by 8 U.S.C. § 1101(a)(43)(N). Section 1101(a)(43)(N) read: "The term 'aggravated felony' means . . . an offense described in paragraph (1)(A) or (2) of section 1324(a) of this title **(relating to** alien smuggling). 8

---

[3] The referenced portion of section 1961 reads: "section 659 (relating to theft from interstate shipment) **if the act indictable under section 659 is felonious**." 18 U.S.C. § 1961(1)(B) (1976) (emphasis added).

7

U.S.C. § 1101(a)(43)(N) (emphasis added).

The defendant, who had previously been convicted of illegal transportation of aliens, argued that the sentencing enhancement was not applicable because he had not been convicted of alien smuggling. According to the defendant, "a conviction for transporting aliens d[id] not 'relate to alien smuggling.'" Id. at 328. In rejecting the defendant's argument, the Fifth Circuit reasoned that:

> The context in which the parenthetical appears in this case suggests its descriptive nature. Section 1101(a)(43) contains a long list of aggravated felonies that it references by section number. Without any descriptions of what this litany of numbers referred to, determining whether an offense qualified as an aggravated felony would be a long and arduous process. One would need to look up each section number in the Code to get to the right one. The parentheticals here provide an aid to identification only.

Id. at 330 (internal quotation marks omitted).

This Court is bound by the decisions of the former Fifth Circuit prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981). Although, Herring did not address the specific statute in the instant case, the undersigned finds the reasoning in Herring persuasive. As in Herring, the statute in the instant case, 18 U.S.C. § 1028A (c), contains a long list of enumerated offenses. Identifying which offenses could serve as underlying offenses "would be a long and arduous process." Monjaras-Castenada, 190 F. 3d at 330. Had Congress intended to omit health-care fraud from the list of underlying offenses in section 1028A(c)(5), it would have used language similar to section 1028A(c)(4), which states: "any provision contained in this chapter (relating to fraud and false statements), **other than this section or section 1028(a)(7).**" 18 U.S.C. § 1028A(c)(4) (emphasis added). See Herring, 602 F.2d at 1223

(noting that had Congress intended to limit section 2314 it would have used the same language used to limit section 659 "(relating to theft from interstate shipment) if the act . . . is felonious").

The undersigned is not persuaded by the reasoning in State v. Rubio, 967 So.2d 768, 780 (Fla. 2007). As Herring and Monjaras-Castenada demonstrate, construing the "related to" language as descriptive does not render it superfluous.  Additionally, and as the government points out, "[u]nder accepted rules of statutory construction, it is generally presumed that Congress in drafting legislation, is aware of well-established judicial constructions of other pertinent existing statutes." Government's Response to Motion to Dismiss Counts 45-56 (Aggravated Identity Theft) (DE# 252 at 7, 2/24/08) citing United States v. Jordan, 915 F.2d 622, 628 (11th Cir. 1990).  Since Rubio involved a State of Florida statute and the Florida Supreme Court decided Rubio in 2007, Congress could not have been aware of Rubio's construction of Fla. Stat. § 895.02(1)(a) (2002) when it enacted 18 U.S.C. § 1028A in 2004.

Based on the foregoing, the undersigned respectfully recommends that Mabel and Abner Diaz's Motion to Dismiss Counts 45-56 (DE# 248, 2/21/08) be **DENIED**.

### II.     Mabel and Abner Diaz's Motion to Dismiss Counts 34 or 3[9] Based on Multiplicity (DE# 249, 2/21/08)

The defendants argue that the Second Superceding Indictment improperly charges them with two counts (Counts 34 and 39) of Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h). See Mabel and Abner Diaz's Motion to Dismiss Counts 34 or 3[9] Based on Multiplicity (DE# 249, 2/21/08). While the government opposes the defendants' motion, in its response, the government advises

that it expects to propose a superceding indictment charging a single count of conspiracy to commit money laundering with two objects, thereby correcting any multiplicity between Counts 34 and 39. As such, the undersigned recommends that Mabel and Abner Diaz's Motion to Dismiss Counts 34 or 3[9] Based on Multiplicity (DE# 249, 2/21/08) be **DENIED as moot**.

### III. Mabel and Abner Diaz's Motion to Dismiss Counts 2-33 Based on Multiplicity (DE# 250, 2/21/08)

The defendants seek to dismiss Counts 2 through 33 of the Second Superceding Indictment for multiplicity. See Mabel and Abner Diaz's Motion to Dismiss Counts 2-33 Based on Multiplicity (DE# 250, 2/21/08). According to the defendants, the government should have charged them with one count of Health Care Fraud, in violation of 18 U.S.C. § 1347, instead of improperly charging them with 32 different counts for a single "scheme or artifice". Id. at 1-2. Title 18, United States Code, Section 1347 states, in pertinent part:

> Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice–
>
> (1) to defraud any health care benefit program; or
>
> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 1347. "The defendants acknowledge that the courts that have decided to date what constitutes the proper unit of prosecution under § 1347 do not agree with [the

defendants'] interpretation of the statute." See Mabel and Abner Diaz's Motion to Dismiss Counts 2-33 Based on Multiplicity (DE# 250 at 2, 2/21/08).

Counts 2 through 33 charge a representative sample of Medicare claims submitted by the defendants. Each count charges the defendants with the submission of a separate claim. The government argues that "[b]ecause each Medicare claim created [a] separate financial risk to Medicare, the government has properly charged a representative sample of those claims in separate counts of the indictment." See Government's Response to Motions to Dismiss Based on Multiplicity (DE# 256 at 3, 2/29/08) (internal citation and quotation marks omitted).

The Eleventh Circuit in United States v. De La Mata, 266 F.3d 1275 (11th Cir. 2001) interpreted a similar statute, the bank fraud statute, in addressing the defendants' ex post facto claims. The bank fraud statute reads as follows:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice--
>
> > (1) to defraud a financial institution; or
> >
> > (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344.  The Eleventh Circuit rejected the government's position that bank fraud was a continuing offense. "The law is clear that the bank fraud statute imposes punishment for each 'execution' of the scheme to defraud, and not each act in furtherance." Id. at 1289. The Eleventh Circuit further noted that "a single bank fraud

scheme [could] be executed multiple times." Id. at 1290. Because the language and structure of the bank fraud statute is similar to the health care fraud statute in the instant case, the Eleventh Circuit's interpretation of the bank fraud statute is instructive. See United States v. Hickman, 331 F.3d 439, 441 (5th Cir. 2003) (rely on bank fraud statute cases in interpreting health care fraud statute).

In Hickman, 331 F.3d at 441, the defendant was charged in two indictments with multiple counts of health care fraud, in violation of 18 U.S.C. § 1347. The two cases were consolidated for trial and the defendant was convicted of all counts. Id. On appeal, the defendant argued that counts one through three of the health care fraud counts violated the Ex Post Facto Clause because the alleged fraudulent acts occurred before the effective date of the health care fraud statute, 18 U.S.C. § 1347. Id. at 445. The Fifth Circuit relied on De La Mata and other bank fraud cases in interpreting section 1347 noting that the "language and structure [of the health care fraud statute was] almost identical to the bank fraud statute, 18 U.S.C. § 1344." Id. The court held "by analogy, that the health care fraud statute, § 1347, punishes executions or attempted executions of schemes to defraud, and not simply acts in furtherance of the scheme. . .. [A]lthough the crime of health care fraud is complete upon the execution of a scheme, **any scheme can be executed a number of times, and each execution may be charged as a separate count**." Id. at 446 (emphasis added).

As in Hickman, the undersigned is persuaded by the cases interpreting the similarly worded bank fraud statute, 18 U.S.C. § 1344, and finds that the unit of the offense created by the health care fraud statute, § 1347, is each execution or attempted

execution of a scheme or artifice. As such, the government properly charged, as separate counts, a representative sample of Medicare claims submitted by the defendants. It is respectfully recommended that Mabel and Abner Diaz's Motion to Dismiss Counts 2-33 Based on Multiplicity (DE# 250, 2/21/08) be **DENIED**.

### RECOMMENDATION

For the foregoing reasons, the undersigned recommends that: (1) Mabel and Abner Diaz's Motion to Dismiss Counts 34 or 3[9] Based on Multiplicity (DE# 249, 2/21/08) be **DENIED as moot** and (2) Mabel and Abner Diaz's Motion to Dismiss Counts 45-56 (DE# 248, 2/21/08) and Mabel and Abner Diaz's Motion to Dismiss Counts 2-33 Based on Multiplicity (DE# 250, 2/21/08) be **DENIED**.

Pursuant to 28 U.S.C. §636(b)(1)(B) and (C), the parties may serve and file written objections to this Report and Recommendation with the Honorable Ursula Ungaro, United States District Judge, within ten (10) days of receipt of a copy of this Report and Recommendation.  See Nettles v. Wainwright, 677 F. 2d 404 (5th Cir. 1982).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida this **12th** day of March, 2008.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Ungaro
All counsel of record