UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20398-CR-UNGARO/O'SULLIVAN

UNITED STATES OF AMERICA,

              Plaintiff,

v.

MABEL DIAZ,

              Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Mabel Diaz's Suggestion of Incompetency (DE# 254, 2/28/08). This matter was referred to the undersigned by the Honorable Ursula Ungaro in accordance with 28 U.S.C. § 636(b). (DE # 258, 3/3/08). Having carefully considered the applicable filings, the law and the testimony, evidence and argument presented during the hearing on June 24 and 25, 2008, the undersigned finds by a preponderance of the evidence that defendant Mabel Diaz is mentally competent to stand trial as provided in 18 U.S.C. § 4241. It is respectfully recommended that defendant Mabel Diaz be found competent to stand trial.

## INTRODUCTION

Mabel Diaz (hereinafter "defendant") is charged in a Third Superceding Indictment with Conspiracy to Commit Health Care Fraud (Count 1) in violation of 18 U.S.C. § 1349, Health Care Fraud (Counts 2-33) in violation of 18 U.S.C. § § 1347 and 2, Conspiracy to Commit Money Laundering (Count 34) in violation of 18 U.S.C. § 1956(h), Money Laundering (Count 35) in violation of 18 U.S.C. § 1957 and 2, Money

Laundering (Counts 36-39) in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 2,

Aggravated Identity Theft (Counts 40-44) in violation of 18 U.S.C. § 1028A and 2,

Aggravated Identity Theft (Counts 45-50) in violation of 18 U.S.C. § 1028A and 2. See

Third Superceding Indictment (DE# 290, 3/28/08).

On February 28, 2008, the defendant filed Mabel Diaz's Suggestion of

Incompetency (DE# 254, 2/28/08). In support, the defendant filed the report of Merry

Sue Haber, Ph.D. dated February 21, 2008. See Sealed Document (DE# 262, 2/29/08).

Dr. Haber evaluated the defendant during a four and a half hour session on January 31,

2008. Dr. Haber conducted a mental status examination, clinical interview, personal

history check list for adults and the Million Clinical Multiaxial Inventory - III (MCMI-III)

test. Dr. Haber's diagnostic impression for Axis I[1] was that the defendant suffers from

bipolar disorder, mixed type with psychotic feature, generalized anxiety disorder and

post traumatic stress disorder. Dr. Haber opined that the defendant developed post-

traumatic stress disorder as a result of the August 2004 search of the defendant's

home by law enforcement.

On March 4, 2008, the undersigned held a status hearing on Mabel Diaz's

Suggestion of Incompetency (DE# 254, 2/28/08). The government requested an

inpatient examination of the defendant. Following the hearing, the undersigned ordered

the government's expert to conduct an outpatient examination of the defendant and to

prepare a report by March 18, 2008. See Order (DE# 260, 3/4/08). The government

---

[1] There are five axes included in the Diagnostic and Statistic Manual of Mental Disorders-IV (DSM IV). Axis I is where the major groups of mental disorders other than personality disorders are reported.

2

retained forensic psychiatrist Vanessa Archer, M.D. Dr. Archer conducted an in-person examination of the defendant on March 14, 2008. Dr. Archer's report was filed on March 28, 2008. See Sealed Document (DE# 286, 3/28/08). Dr. Archer interviewed the defendant and administered the Minnesota Multiphasic Personality Inventory - 2 test. Dr. Archer noted that the defendant endorsed a significant number of symptoms to such an extent that the possibility that the defendant was exaggerating her symptoms could not be ruled out. Nonetheless, Dr. Archer concluded that the defendant was currently experiencing a genuine amount of emotional distress. Dr. Archer also administered the Structured Interview of Reported Symptoms. According to Dr. Archer, the testing results indicated that the defendant was probably feigning and/or exaggerating at least some of her symptoms and the possibility that the defendant was also feigning cognitive deficits could not be ruled out. "[W]hile the psychological testing . . . support[s] the contention that [the defendant] is emotionally and psychiatrically compromised to some extent, she is likely exaggerating her presentation and self-report." See Dr. Archer's Report at 8. Dr. Archer did not testify at the evidentiary hearing.

On March 28, 2008, the government sought an inpatient competency examination of the defendant. See Government's Renewed Motion for Inpatient Competency Examination (DE# 287, 3/28/08). On March 31, 2008, the undersigned held a status hearing. At the status hearing, the defendant agreed to voluntarily submit to an inpatient competency examination. Following the status hearing, the undersigned issued an Order for Inpatient Competency Examination (DE# 294, 3/31/08) of the defendant.

3

The defendant was sent to the Federal Detention Center (hereinafter "FDC") in Miami, Florida for an inpatient evaluation. The defendant arrived on April 30, 2008 and was evaluated for approximately 30 days. The defendant underwent a battery of tests and was observed and evaluated by mental health professionals. The following psychological tests and procedures were used: clinical interviews, mental status evaluation, Test of Memory Malingering (TOMM), Personality Assessment Inventory (PAI), Booklet Category Test - Second Edition (BCT), Weschler Abbreviated Scale of Intelligence (WASI), Structured Inventory of Malingered Symptomatology (SIMS) and the Georgia Court Competency Test - Mississippi State Hospital (GCCT-MSH).

On June 16, 2008, Dr. Rodolfo A. Buigas, a forensic psychologist with FDC, issued his report. For Axis I, Dr. Buigas diagnosed the defendant with somatoform disorder not otherwise specified, anxiety disorder and malingering. Dr. Buigas noted that the defendant's results on objective psychological testing were consistent with persons grossly exaggerating or fabricating symptoms of psychiatric and cognitive impairment. According to Dr. Buigas, while the defendant may have some degree of genuine anxiety symptomatology, she was grossly exaggerating or fabricating the nature and severity of her symptoms. In Dr. Buigas' opinion the defendant is competent to proceed to trial.

On June 24 and 25, 2008, the undersigned conducted an evidentiary hearing to determine the mental competency of the defendant pursuant to 18 U.S.C. § 4241. During the hearing, the parties presented witnesses and the undersigned admitted

4

Government's Exhibits 1 through 4.[2] The defendant did not introduce exhibits at the hearing. The government's witnesses were Dr. Buigas, Special Agent Julie Rivera of the Department of Health & Human Services and Federal Bureau of Investigation Special Agent Cesar Facio. The defendant's witnesses were the defendant's former treating psychiatrist (Dr. Alina Nodal) and Dr. Haber.

## BACKGROUND

### 1.    Defendant's Medical History

In January 2000, the defendant first complained of anxiety to her gastroenterologist, Dr. Felix J. Gonzalez, after taking diet pills. Dr. Gonzalez initially prescribed Klonopin to help control the defendant's anxiety. He later added Paxil when the defendant reported agitation and depression. In March 2004, the defendant had developed "marked panic attacks." Dr. Gonzalez discontinued Paxil and placed the defendant on Lexapro. Dr. Gonzalez later placed the defendant on Wellbutrin. Dr. Gonzalez was unable to manage the defendant's depression and anxiety with medication.

In August 2004, the defendant was admitted to Palmetto Hospital for a panic attack after law enforcement agents executed a search warrant at the defendant's home, see infra. The defendant reported not being able to sleep in her bed for three months as a result of this search.

In September 2004, the defendant began seeing Dr. Alina Nodal, a psychiatrist, for her anxiety and depression. The defendant saw Dr. Nodal for a period of

---

[2] These exhibits were Dr. Buigas' report (Exhibit 1), Dr. Haber's report (Exhibit 2), Dr. Archer's Report (Exhibit 3) and a Garcia hearing transcript (Exhibit 4).

approximately four years. Dr. Nodal treated the defendant with various medications including Paxil, Vistaril, Klonopin, Wellbutrin, Cymbalta and Lorazepam (Atavan) with limited success. During her sessions with the defendant, Dr. Nodal observed the defendant shaking, sweating, touching her chest and complaining of heart palpitations, when the defendant described certain events such as when a family member made a negative comment (referring to the defendant as crazy) or when the defendant felt she was not needed, appreciated or listened to.

Dr. Nodal believes the defendant's ability to concentrate, perceive and process is not good. She opines that the defendant would decompensate[3] at trial and that trial would be devastating for the defendant. Dr. Nodal does not have a background in forensic psychology and while she opines that the defendant would not be able to withstand the pressures of a complex trial, she has no experience with legal proceedings. The instant competency hearing was her first time testifying in court.

**2.    The Search Warrant Execution**

In August 2004, law enforcement agents executed a search warrant at the defendant's house. According to the defendant, she was in bed with her baby[4] when agents entered her home. A female officer pointed a gun at the defendant and told the defendant that she was charged with having committed a $1.2 million fraud.[5]

---

[3] Dr. Nodal described the term "decompensate" as not being able to sit and talk normally, being overwhelmed, nervous, sweaty and shaky.

[4] The defendant's son was approximately 7 years old at the time.

[5] There were four female agents involved in the search of the defendant's house. Three of the agents unequivocally stated to Special Agent Facio that they did not draw their weapons during this search. A fourth agent stated that she did not specifically

Special Agent Cesar Facio arrived at the defendant's house a few minutes after the search warrant was executed. Agent Facio asked the defendant if he could talk to her. The defendant agreed. Agent Facio and another agent sat with the defendant at a table in the defendant's backyard. Agent Facio spoke to the defendant for about 10 to 20 minutes. During their conversation, Agent Facio asked the defendant about All-Med Billing Corp. (hereinafter "All-Med"), the medical billing company that the defendant and her husband own. The defendant answered Agent Facio's first question, stating that All-Med was located in Miami Lakes. However, when Agent Facio asked the defendant a few more questions about All-Med, the defendant advised Agent Facio that she was represented by counsel and that she would not speak unless counsel was present. During this exchange, Agent Facio provided the defendant with a summons and explained that she should give the summons to her attorney. The defendant appeared to understand Agent Facio.

With respect to the defendant's emotional state, Agent Facio testified that when he first approached the defendant, she was quite anxious. Agent Facio explained that it is common for individuals to be anxious during the execution of a search warrant. The defendant asked the same questions multiple times requiring Agent Facio to repeat himself. However, when the defendant was taken to the backyard, she appeared to calm down significantly and was able to engage in a conversation with Agent Facio and later invoked her right to counsel.

---

remember but that she would not normally draw a weapon during a search in a health care fraud case. When the defendant spoke to Special Agent Cesar Facio, during the search, she did not report that someone had pointed a gun at her.

### 3.    Service of Subpoenas on All-Med Employees

On May 18, 2005, Agent Facio went to All-Med to serve subpoenas on several All-Med employees. The defendant was present that day and greeted Agent Facio. The defendant was cooperative and helped coordinate the employees who needed to be served. She questioned Agent Facio about someone previously meeting with two of her employees. The defendant and her husband were cordial toward Agent Facio.

### 4.    The Defendant's Arrest

On May 23, 2007, law enforcement agents arrested the defendant and her husband at their home. Following her arrest, the defendant was transported to an FBI office. Agents were told that the defendant had to obtain a medical clearance before she could be turned over to the Marshals because, at the time, the defendant was pregnant and at a high risk of miscarrying. The defendant was transported from the FBI office to Jackson Memorial Hospital (hereinafter "JMH") to obtain a medical clearance. While the defendant was being transported to JMH, the defendant complained of hot and cold flashes. She had her eyes closed for a certain period of time and explained that she sometimes got car sick because of diet pills she had taken. At JMH, there were some delays in obtaining the medical clearance because the ward where the defendant was taken did not have a sonogram machine. The defendant was told that if she did not obtain a medical clearance and was not processed by the Marshals in time for her initial appearance, she would have to spend the night in prison. The defendant suggested that the agents contact her doctor so he could provide the medical clearance. Ultimately, the medical clearance was obtained from JMH.

5.     **Abner Diaz's Change of Plea Hearing**

On June 20, 2008, the defendant's husband pled guilty to the Third Superceding Indictment. The defendant was present in the courtroom. The hearing took approximately 30 minutes. Following the hearing, the defendant was talking to others. Her demeanor was relatively calm, a little resigned and somewhat tearful. The defendant was not shaking, sweating or exhibiting any outward signs of anxiety.

## LEGAL STANDARD

The Court is required to hold a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). "The legal test for competency is whether the defendant had 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and whether he had 'a rational as well as factual understanding of the proceedings against him.'" United States v. Cruz, 805 F.2d 1464, 1479 (11th Cir. 1986) (quoting Dusky v. United States, 362 U.S. 402, 402, (1960)). The parties do not dispute that the defendant has a rational and factual understanding of the proceedings against her. At issue is whether the defendant has sufficient present ability to consult with her lawyer with a reasonable degree of rational understanding.

It is unclear which party has the burden of proof under 18 U.S.C. § 4241. Section 4241 provides that either party "may file a motion for a hearing to determine the mental competency of the defendant," 18 U.S.C. § 4241(a), but does not state which party has

the burden of proof. In <u>United States v. Makris</u>, 535 F.2d 899, 906 (5th Cir. 1976),[6] the former Fifth Circuit stated that "[t]here can be no question that in federal criminal cases the government has the burden of proving defendant competent to stand trial at the § 4244[7] hearing or its <u>nunc pro tunc</u> substitute." However, in <u>United States v. Izquierdo</u>, 448 F.3d 1269, 1276 (11th Cir. 2006), the Eleventh Circuit stated in <u>dicta</u> that "the relevant competency statute [18 U.S.C. § 4241] arguably contemplates that the burden will lie with the party making a motion to determine competency." <u>Izquierdo</u> distinguished <u>Makris</u> because it was based on section 4244 and because <u>Makris</u> involved the government's pretrial motion to determine the competency of the defendant. <u>Izquierdo</u> held that the district court did not err in placing the burden of proof on the defendant where the defendant sought to withdraw his guilty plea based on incompetency. <u>Id.</u> at 1278. Based on the narrow holding of <u>Izquierdo</u> and because <u>Izquierdo</u> did not overrule <u>Makris</u>, the undersigned will place the burden of proof on the government.  The undersigned notes that in the instant case, placing the burden of proof on the government does not affect the outcome of these proceedings.

## DISCUSSION

**1.    The Defendant Has a Rational as Well as Factual Understanding of the Proceedings Against Her**

Under the first prong, the defendant must be able to understand the nature and

---

[6]   The Eleventh Circuit in <u>Bonner v. City of Prichard</u>, 661 F. 2d 1206, 1207 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[7]   "In 1984, 18 U.S.C. § 4244 was replaced by 18 U.S.C. § 4241." <u>United States v. Izquierdo</u>, 448 F.3d 1269, 1278, n 8 (11th Cir. 2006).

consequences of the proceedings against her. It is undisputed that the defendant satisfies this prong.  In her evaluation with Dr. Archer, the defendant stated that she believed she had been charged with Medicare fraud in the amount of approximately $52 million and that she was possibly charged with money laundering. The defendant understood that, if convicted, she was facing a significant period of incarceration. The defendant also understood the role of the judge, the prosecutor, the jury and her attorney. She knew that it was her attorney's job to defend her. The defendant was also able to relay the events in her case including the search of her home, her arrest and the <u>Garcia</u> hearing. The parties do not dispute, and the undersigned finds, that the defendant has a rational as well as factual understanding of the proceedings against her.

**2.      The Defendant has Sufficient Present Ability to Consult with Her Lawyer with a Reasonable Degree of Rational Understanding**

The undersigned concludes that the defendant has sufficient present ability to consult with her lawyer with a reasonable degree of rational understanding. The undersigned credits Dr. Buigas' testimony that the defendant appears to have the capacity to assist properly toward her defense if motivated to do so. Dr. Buigas diagnosed the defendant with somatoform disorder not otherwise specified, anxiety disorder and malingering. Dr. Buigas' malingering diagnosis was supported by the defendant's test scores and the defendant's observable behavior at FDC which suggested gross exaggeration by the defendant of her psychological or physical symptoms. There is also a strong motive for secondary gain since the defendant is facing a significant period of incarceration if convicted on these charges. According to

11

Dr. Buigas, it was possible that the defendant's characterological disorder may interfere with her relationships including with that of her attorney, however, such behavior would be the result of volitional personality traits rather than a mental illness or defect.

Dr. Haber opined that the defendant cannot make intelligent and meaningful decisions on her own behalf and cannot assist in her defense. The defendant reported to Dr. Haber that when she thinks or talks about the case, she becomes emotionally upset, and cannot focus or concentrate. The defendant has to lie down and go to sleep or stay up and walk around the house. The defendant does not show up for some appointments with defense counsel. When the defendant does go to defense counsel's office, she frequently has to leave because of a panic attack and is unable to assist defense counsel.

Dr. Haber noted that the defendant was virtually non-functional, staying in bed much of the day and that only recently (the defendant met with Dr. Haber on January 31, 2008) was she able to perform activities of daily living on a regular basis.[8] However, correctional staff working in the general housing unit and the Special Housing Unit reported that the defendant demonstrated no difficulties with personal care, communication, feeding and other activities of daily living. This is consistent with Dr. Buigas' testimony that the defendant exaggerates her symptoms in order to garner attention or special treatment.

Based on the evidence, the undersigned finds that the defendant is competent to

_____

[8] The defendant similarly reported to Dr. Archer that she had difficulty performing daily activities stating that she did not care whether she ate and did not clean the house.

proceed to trial. Although Dr. Haber and Dr. Buigas' opinions differ concerning the

defendant's competency to stand trial, both doctors testified that the defendant

exaggerates her symptoms. Dr. Buigas, unlike Dr. Haber, believes the defendant's

exaggeration is volitional. The undersigned is persuaded by Dr. Buigas' testimony. Dr.

Haber was only able to assess the defendant for a period of four and a half hours in a

single day and administered one test, the MCMI - III.[9] The defendant was at FDC for

approximately 30 days. Dr. Buigas, and the other medical professionals at FDC, spent

significantly more time with the defendant, reviewing records and consulting with others

who had observed the defendant functioning inside FDC. Dr. Buigas and the medical

professionals at FDC met with the defendant for approximately seven hours. Some of

the meetings consisted of discussions only, and at other times various tests were

administered. Many of these tests were specifically targeted to identify malingering.

The undersigned also credits the testimony of Special Agents Rivera and Facio.

See United States v. Makris, 535 F.2d 899, 908 (5th Cir. 1976) (district court considered

lay and medical evidence that the defendant had the ability to cope with stressful

situations and was capable of faking or exaggerating his symptoms to suit his own

purposes ). Special Agent Facsio testified that following the execution of the search

warrant at the defendant's home, he was able to take the defendant outside and speak

with her in a rational manner. The defendant responded to Special Agent Facio's

questions and was even able to invoke the right to counsel. Special Agent Facio also

described the defendant as cooperative when he arrived at the defendant's place of

---

[9] Notably, Dr. Buigas saw evidence of malingering or exaggeration by the
defendant on the MCMI - III test administered by Dr. Haber.

business to serve subpoenas on some of the defendant's employees. The defendant was able to coordinate and assist Special Agent Facio.

Similarly, when the defendant was arrested, she may have experienced a panic attack (complaining of hot and cold flashes and closing her eyes) but she was able to regain control and even suggested to Special Agent Rivera that her treating physician could provide medical clearance after it became apparent to the defendant that she could spend the night in prison if she did not obtain timely medical clearance. In another instance, the defendant remained calm and even cooperative when Special Agent Facio went to All-Med to serve subpoenas on some of the defendant's employees.

The fact that the defendant has a history of anxiety and depression is not determinative of whether the defendant is competent to stand trial. In many instances the defendant reported a panic attack but was able to regain composure and function. "Incompetency to stand trial is not defined in terms of mental illness. As such, a defendant can be competent to stand trial despite being mentally ill and similarly a defendant can be found incompetent to stand trial without being mentally ill." United States v. Williams, No. 5:06-cr-36-Oc-10GRJ, 2007 WL 1655371, at * 5 (M.D. Fla. Jun. 7, 2007 ) (internal citation and quotation marks omitted). Based on the  testimony of Dr. Buigas and Special Agents Rivera and Facio, the undersigned finds that the defendant's mental illness does not render her unable to assist properly  in her defense.

## CONCLUSION

The defendant does appear to have a long history of anxiety and depression. However, the undersigned credits Dr. Buigas' opinion that the defendant appears to have the capacity to assist properly toward her defense when motivated to do so.

14

Although the defendant is subject to panic attacks, she is able to regain her composure. Notably, the defendant was able to regain composure after high-stress situations such as the search of her home and following her arrest. In both instances, the defendant was able to speak to the agents and following her arrest she even suggested that her doctor be contacted so that she could be brought to the courthouse in time for her initial appearance. The defendant was calm and cooperative when Agent Facio came to her business to serve subpoenas on her employees. The undersigned notes that interacting with law enforcement would be more stressful to the defendant than speaking with her attorney, whom the defendant understands is there to defend her, and is not in an adversarial position. The defendant may experience a panic attack during trial which the Court can address at that time. The undersigned finds by a preponderance of the evidence that the defendant is competent to stand trial as provided in 18 U.S.C. § 4241.

<u>**RECOMMENDATION**</u>

For the foregoing reasons, the undersigned recommends that the defendant be found competent to stand trial. Pursuant to 28 U.S.C. §636(b)(1)(B) and (C), the parties may serve and file written objections to this Report and Recommendation with the Honorable Ursula Ungaro, United States District Judge, by **Thursday, July 3, 2008**.[10] <u>See</u> <u>Nettles v. Wainwright</u>, 677 F. 2d 404 (5th Cir. 1982).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida this <u>**30th**</u> day of June, 2008.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Ungaro
All counsel of record

---

[10] This matter is set for trial on Monday, July 7, 2008.

15